Nathan J. Kunz (024819)
nkunz@brodygapp.com
**BRODY | GAPP LLP**
2102 Business Center Drive, Suite 2047
Irvine, CA  92612
Telephone: (602) 962-1976

*Attorneys for Plaintiff NEXA Mortgage, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| NEXA Mortgage, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br>v.<br><br>Austin Dell'Abate, a resident of Texas,<br><br>Defendant. | Case No.:<br><br>**VERIFIED COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff NEXA Mortgage, LLC, by and through its attorneys, for its Complaint against Defendant Austin Dell'Abate, alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is a civil action arising out of Defendant Austin Dell'Abate's breach of the written covenants in his Independent Contractor Agreement ("Agreement") with NEXA Mortgage, LLC ("NEXA" or the "Company"), his misappropriation and continued retention of NEXA's confidential information and trade secrets, his publication of false and defamatory statements about NEXA and its personnel, and his tortious interference with NEXA's customer and referral relationships.

2. Following the termination of his engagement, Defendant refused to return NEXA's loan files, leads, and customer information, publicly claimed that NEXA's clients and files belonged to him, solicited and attempted to divert NEXA's customers, published false statements accusing NEXA and its personnel of criminal and predatory

1

conduct, and subjected NEXA's employees to a course of harassing and abusive communications, all in violation of his contractual, statutory, and common law obligations.

3.    NEXA brings this action to recover damages under the federal Defend Trade Secrets Act and Arizona law, to recover the liquidated damages, attorneys' fees, and costs provided by contract and statute, and to obtain injunctive relief restraining Defendant's ongoing unlawful conduct.

## JURISDICTION AND VENUE

4.    This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1331, because NEXA asserts a claim arising under the laws of the United States, namely the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et seq.

5.    This Court has supplemental jurisdiction over NEXA's related state law claims under 28 U.S.C. § 1367, because those claims are so related to the federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

6.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to NEXA's claims occurred in this District.

7.    Venue and this Court's exercise of personal jurisdiction over Defendant are further proper because, in Section XV of the parties' Agreement, the parties agreed that "any litigation between the parties may only be brought in Federal District Court in Arizona, or in the event subject-matter jurisdiction is lacking, in an Arizona State Court of competent jurisdiction," and consented "to personal jurisdiction in Arizona limited to such matters"; and because Section XVI of the Agreement expressly provides that it "does not prevent any party from seeking relief in a state or federal court located in Arizona, arising from any action that violates section XIV of this Agreement." As alleged below,

VERIFIED COMPLAINT

each of NEXA's claims either enforces the Agreement or seeks relief arising from actions that violate Section XIV.

**PERSONAL JURISDICTION OVER DEFENDANT**

8.     Defendant is subject to specific personal jurisdiction in Arizona because he has expressly aimed intentional conduct at Arizona, knowing that the harm would be suffered in Arizona, where NEXA maintains its principal place of business and where the executives, employees, customers, and loan files he has targeted are located. Among other things, Defendant: (a) sent repeated written communications to NEXA in Arizona and, on July 29, 30, and 31 and August 4, 2026, a series of at least twelve e-mails to NEXA's counsel in which he demanded that NEXA, an Arizona company, immediately wire him more than $50,000, warned that "this is going to escalate quickly no if ands or buts," threatened to make purported complaints against NEXA "public knowledge," and stated that "the sheriff's office is requesting" the home addresses of NEXA's Chief Executive Officer, who maintains a residence in Arizona and works from NEXA's Arizona offices, and of NEXA's Director of Growth and Retention; (b) placed telephone calls to NEXA personnel in Arizona, including a July 25, 2026 call to a NEXA consumer relations representative that was terminated because of Defendant's profanity; (c) sent text messages to NEXA personnel; and (d) published statements on social media and industry platforms concerning NEXA's Arizona-based business and its personnel, which statements were received and circulated in Arizona.

9.     Defendant's conduct was expressly aimed at Arizona: his telephone calls, text messages, and written demands were directed to NEXA and its personnel in Arizona; his e-mails to NEXA's counsel, though transmitted to counsel outside Arizona, expressly targeted Arizona, demanding payment from an Arizona company and seeking the home address of its Chief Executive Officer, who maintains a residence in Arizona; his statements concerned an Arizona company, its Arizona-licensed mortgage operations, and loans originated through NEXA's Arizona-based systems; and his stated objective was to

3

compel an Arizona company to pay him money and to divert customers, leads, and loans in process away from NEXA's Arizona-based business. Defendant knew that the resulting harm—the loss of NEXA's customers, goodwill, files, and confidential information—would be suffered by NEXA in Arizona.

10.     In addition, by Section XV of the Agreement, Defendant consented to personal jurisdiction in Arizona with respect to litigation regarding matters outside a "Covered Dispute" (as defined in the ICA), which, as alleged below, includes each of NEXA's claims in this action.

**THE AGREEMENT'S ARBITRATION PROVISION
DOES NOT APPLY TO THIS ACTION**

11.     Section XVI of the Agreement provides for arbitration of a "Covered Dispute," which Section II.C of the Agreement defines as "any claim arising out of this Agreement or the relationship between the parties excluding (i) a claim enforcing or challenging this Agreement; (ii) any complaint or charge with a State, Federal, or County agency; or (iii) any claim for which mandatory arbitration is prohibited as a matter of law." Section XVI further provides that "this Agreement does not prevent any party from seeking relief in a state or federal court located in Arizona, arising from any action that violates section XIV of this Agreement."

12.     None of NEXA's claims in this action is subject to arbitration. Counts I, II, III, and VII enforce the Agreement and are expressly excluded from the definition of Covered Dispute, and each seeks relief arising from actions that violate Section XIV—including Defendant's retention of NEXA's documents, files, and electronic records in violation of Section XIV.B, his failure to account for, and his diversion of, leads and loans in process in violation of Section XIV.D, and his interference with NEXA's business and solicitation of its customers in violation of Section XIV.E. As alleged below, each publication and communication underlying Counts IV, V, and VI was itself an action to divert NEXA's leads and loans in process away from NEXA and to interfere with NEXA's

4

business in violation of Sections XIV.D and XIV.E, and those Counts likewise seek relief "arising from . . . action[s] that violate[] section XIV" within the meaning of Section XVI.

## THE PARTIES

13.    Plaintiff NEXA Mortgage, LLC (d/b/a NEXA Lending) is a limited liability company organized under the laws of the State of Arizona, with its principal place of business in Arizona. NEXA is a licensed mortgage broker that originates residential and commercial mortgage loans through licensed loan originators using the Company's lender relationships, compliance infrastructure, and loan origination systems.

14.    Defendant Austin Dell'Abate is, upon information and belief, an individual who resides in and is a citizen of the State of Texas. Defendant is a licensed mortgage loan originator (NMLS #184155) who formerly performed loan origination services as an independent contractor of NEXA.

## FACTUAL ALLEGATIONS

**A.    The Independent Contractor Agreement and Defendant's Obligations**

15.    The NEXA Mortgage, LLC Independent Contractor Agreement (the "Agreement") is dated and was entered into as of May 8, 2026; it was executed on behalf of NEXA on May 8, 2026 and by Defendant on May 15, 2026, on which date the document was completed by all parties. A true and correct copy of the Agreement, as executed, is attached as Exhibit A-1, and the additional executed instruments described below are attached as Exhibit A-2. Under the Agreement, Defendant performed licensed loan origination activities under NEXA's license and using NEXA's lender relationships, compliance infrastructure, and loan origination systems.

16.    The Agreement was executed electronically through PandaDoc as a single integrated document bearing Reference Number T7PLB-PTKWF-5Z2QW-3CQGM. That executed package, attached as Exhibits A-1 and A-2, includes, in addition to the Agreement, five further instruments signed by Defendant on the same date: an Acknowledgement of his status as a 1099 independent contractor, in which he agreed that

5

"[n]o employer-employee relationship exists regardless of what the relationship is called"; NEXA's Strict Email Use Policy; NEXA's Do Not Call Policy and Telephone Consumer Protection Act acknowledgment; NEXA's Ethics Policy; and an Addendum to Onboarding Agreement.

17.    Under NEXA's Strict Email Use Policy, Defendant agreed that it is "strictly prohibited to forward any emails originating from or addressed to NEXA Mortgage email accounts to any external or third-party email addresses," including "personal email accounts," and that sharing NEXA e-mail content with non-employees "via any medium" without written management approval is prohibited.

18.    NEXA invested substantial money and resources in its loan origination systems, its compliance infrastructure, and its relationships with lenders, and the Agreement recites that those systems and relationships are not readily available and cannot easily be established without the expenditure of substantial resources.

19.    The Agreement, in Section XIV, imposes on Defendant express covenants concerning confidential information, trade secrets, non-solicitation, and the Company's property, including the following.

20.    Defendant acknowledged that, by reason of his relationship with NEXA, he would have access to NEXA's confidential and proprietary information and trade secrets—defined to include the Company's "business methods, leads, loan programs, advertising programs, referral sources, marketing strategies, software, investor lists, and Company's documentation"—and agreed that both during and after his relationship with NEXA he would use such information solely for NEXA's benefit and would not disclose it without NEXA's prior express written authorization (Section XIV.A).

21.    Defendant acknowledged that all documents, files, electronic records or data, and materials of any sort pertaining to NEXA's business are the "sole and exclusive property of Company," that he has no right to keep or use such materials following

6

termination, and that upon termination he "shall not retain any such documents or things in his/her possession and will immediately return them to Company" (Section XIV.B).

22.    Defendant acknowledged that "all leads provided to or worked on by Contractor and loans in process are Company's property," agreed to provide upon termination a written account of all open leads, business prospects, and loans in process, and agreed "not to take any action to divert such loans to a competitor or away from Company" (Section XIV.D).

23.    Defendant agreed that, for twelve (12) months following the cessation of his relationship with NEXA (such period, by the terms of Section XIV.E, "not to include any period(s) of violation or period(s) of time required for litigation to enforce the covenants herein"), he would not interfere with NEXA's business and would not, directly or indirectly, solicit, encourage or facilitate any customer or client who had closed a loan with NEXA in the preceding twelve months "to refinance or otherwise prematurely pay-off such loans." Defendant further agreed that, during that same twelve-month period, should he "either directly or indirectly, interfere with the business of Company or either directly or indirectly solicit the transfer of any current customer of Company to others," he would "compensate Company $7,500.00 for each solicited current customer in violation of this clause." Section XIV.E provides that "Current customers include any loan applications taken in the name of Company but not yet funded," defines a "Current Customer" as a person who has applied with NEXA for a mortgage loan and has provided his or her name, income, Social Security number, estimated property value and loan amount sought, and provides that "[a] Current Customer may be released to a Contractor only by the express written consent of the Chief Executive Officer of the Company." NEXA released no Current Customer to Defendant.

24.    Defendant further agreed that, for twelve (12) months following the cessation of his relationship with NEXA, he would not, directly or indirectly, solicit any person in an employment or independent contractor relationship with NEXA to leave the

7

Company or form or join another entity (Section XIV.F), and agreed to show the Agreement to any subsequent company with whom he works or does business within twelve months following termination (Section XIV.G).

25. Defendant further agreed in Section XIV.H that "the restrictions herein will not interfere with or unduly limit his/her ability to obtain suitable alternative gainful employment or income following termination of relationship with Company," and acknowledged that "the protections afforded to Company herein, are reasonable and necessary." The Agreement further provides that NEXA is entitled to recover all legal fees and expenses incurred in investigating and enforcing the covenants in Section XIV, including fees and expenses incurred prior to filing suit (Section XIV.H), and that the Agreement is governed by the law of the State of Arizona (Section XVI).

**B.      Termination of the Relationship**

26. On July 22, 2026, NEXA terminated its relationship with Defendant by written notice, effective that date. The termination followed a documented pattern of abusive and unprofessional conduct that had generated complaints from two independent loan-processing companies, a federal agency, NEXA's wholesale lender, a borrower, and NEXA's own personnel. NEXA's written notice advised Defendant that his loans in process would be transitioned to and managed by Walter Brown, NEXA's Director of Growth and Retention, that he was not eligible for rehire, and that, per the directive of NEXA's wholesale lender, he was to refrain from any further communication with that lender.

27. On the morning of July 22, 2026, NEXA's wholesale lender transmitted to NEXA a report of Defendant's live pipeline, which identified five loans in process and unfunded, and asked that NEXA "make sure the borrowers are taken care of and reassigned." Each of those five borrowers was a Current Customer within the meaning of Section XIV.E of the Agreement.

**C.      Defendant's Post-Termination Misconduct**

8

28.    Following termination, Defendant refused to return NEXA's loan files, leads, and customer information, and instead publicly and repeatedly asserted that NEXA's clients, loan files, and "pipeline" belonged to him, demanded that they be "left alone," and threatened to take NEXA's clients and files, notwithstanding the Agreement's express designation of that property as NEXA's.

29.    Defendant solicited, encouraged, and attempted to divert NEXA's customers, clients, and loan applicants away from NEXA, including by publishing communications urging customers not to do business with NEXA and its personnel.

30.    Defendant published, on social media and on the National Mortgage Professional platform, among other places, false and disparaging statements concerning NEXA, its officers, and its personnel, which were published to third parties. These statements include, without limitation, that NEXA's Director of Growth and Retention "is a predator lies upon recruiting and belonging in prison"; that NEXA and its personnel are "Predators"; that NEXA's chief executive is in "collaboration with investor pricing 8 thousand dollars higher on average to steal from consumer and orgination"; and that NEXA "keeps lion shares of your revenue and calls it a ledger and keeps the money by parting ways when their investors drop ball."

31.    Defendant's statements falsely accuse NEXA and its personnel of criminal conduct, fraud, and dishonest and unethical business practices, and are of a kind that injure NEXA in its business, trade, and profession and that discredit the manner in which NEXA conducts its business. The statements are false.

32.    Defendant further engaged in a course of harassing, abusive, and profane communications directed at NEXA's human resources, accounting, and consumer relations personnel, including a telephone call on or about July 25, 2026 to a NEXA consumer relations representative that was terminated because of Defendant's use of profanity, and made escalating demands for compensation that are not founded in or supported by the Agreement—demanding a $20,000 wire transfer on July 24, 2026,

9

$50,000 on July 26 and 27, 2026, and more than $50,000 from NEXA's counsel on July 29, 30, and 31 and August 4, 2026. Defendant's demands began earlier than his messages to counsel. On July 24, 2026 at 11:30 a.m. he e-mailed NEXA demanding that "monies" be "wired before noon today for my Sanchez file nexa100 3.65 bps." On July 25, 2026, between 12:15 and 12:20 p.m., he wrote that he had "13 hard written complaints against nexa," demanded "20k owed today," asserted that he had NEXA's Director of Growth and Retention "lieing on video upon recruiting viral now," claimed "18 compliant formally," and wrote "God is watching!"

**D.     Defendant's Publications and Communications Were Actions to Divert NEXA's Loans and Customers Away from NEXA**

33.     Each of the publications and communications alleged above was directed at NEXA's Current Customers (as defined in Section XIV.E of the Agreement), leads, loan applicants, referral sources, or personnel, and was an action taken to divert NEXA's leads and loans in process away from NEXA and to interfere with NEXA's business, in violation of Sections XIV.D and XIV.E of the Agreement, including without limitation the following.

34.     On or about July 22, 2026, Defendant published comments on the National Mortgage Professional Facebook page—an industry trade publication followed by mortgage professionals—falsely disparaging NEXA and its Chief Executive Officer, asserting among other things that "The battle for running the most predatory company in the industry goes to lil mike!"; that NEXA's chief executive is in "collaboration with investor pricing 8 thousand dollars higher on average to steal from consumer and orgination" and "[h]es not a hero hes a villain"; and that NEXA "keeps lion shares of your revenue and calls it a ledger and keeps the money by parting ways when their investors drop ball."

35.     Separately, in direct messages to NEXA's Facebook page, in text messages to NEXA personnel, and in communications to NEXA's customers and referral sources, Defendant asserted that NEXA's clients, files, and "pipeline" belong to him and demanded

that they be "left alone," stating among other things that "[a]ll of my pipeline i own via my software before any of nexa" and that his pipeline is "self generated" because the applications "went through my website 1st. Hence ownership is through my company." Those communications were directed at the loan applicants and customers comprising NEXA's pipeline of loans in process and were calculated to cause those customers to abandon their NEXA loans.

36.     On or about July 22 and 23, 2026, Defendant posted derogatory comments beneath recruiting posts published by Walter Brown, NEXA's Director of Growth and Retention, which posts had been distributed to the industry groups "Real Estate Community USA" and "Mortgage Loan Officer Referral Web & New Ways To Gain Massive Engagement." Defendant's comments included that Mr. Brown "is a predator lies upon recruiting and belonging in prison," and Defendant attached to those comments a screenshot of a NEXA customer's e-mail. Defendant published those comments publicly, under his own name and his mortgage loan originator license number, NMLS #184155. Thereafter, on and after July 22, 2026, Defendant sent Mr. Brown a series of text messages targeting the customer relationships Mr. Brown services on NEXA's behalf.

37.     On or about July 22, 2026, Defendant transmitted to NEXA a written demand asserting that loan applicants whose applications had been taken in NEXA's name were his "clients," demanding that NEXA cease contacting them, and threatening legal action if NEXA continued to service its own loans in process; on and after July 24, 2026, Defendant sent text messages to NEXA personnel to the same effect.

38.     On or about July 25, 2026, Defendant telephoned NEXA's consumer relations personnel; the call was terminated because of Defendant's profanity, and NEXA prepared an incident report.

39.     On or about July 27, 2026, Defendant sent a series of text messages to a NEXA employee concerning NEXA's customers and loans in process.

11

40.    On July 28, 2026, NEXA's counsel sent Defendant a cease-and-desist and demand letter by certified mail and by electronic mail, enclosing a copy of the Agreement and demanding that Defendant immediately return all of NEXA's property, loan files, leads, loans in process, customer lists and information, and pricing information, and provide the written account of open leads, business prospects, and loans in process required by Section XIV.D, confirming compliance in writing within three business days. Defendant did not comply, and has never provided the written account required by Section XIV.D.

41.    On July 29, 30, and 31 and August 4, 2026, Defendant sent NEXA's counsel at least twelve e-mails in which he claimed ownership of NEXA's "self generated pipeline," demanded an immediate wire transfer of more than $50,000, asserted that NEXA had committed first "over 52 documented occurrences" and then "42 violations" of a cease-and-desist letter he had sent on July 22, 2026, accused NEXA and its counsel of transmitting "fraudulent" and "false compensations plans," stated that it is his "duty to make public knowledge how predatory nexa practices on a daily basis," threatened to circulate purported complaint letters against NEXA, warned that "this is going to escalate quickly no if ands or buts," and stated that "the sheriff's office is requesting" the home addresses of NEXA's Chief Executive Officer and Mr. Brown and that "we need to make an example of your clients."

42.    Defendant's conduct did not cease upon receipt of NEXA's demand. On July 30, 2026, NEXA's counsel asked Defendant in writing to cease communicating with him directly, to identify the counsel Defendant claimed to have retained, and advised that counsel would not respond further. Defendant never identified any counsel and, on the morning of July 31, 2026, e-mailed NEXA's counsel again, demanding "Stop harassing me and wire my money." On August 4, 2026 at 3:34 p.m., Defendant e-mailed NEXA's counsel again, demanding "all 3.85 and refund of all nexa charges and ny admin fee to pay my staff in section b for [Loan No. 1526245313]," threatening that if the money was

VERIFIED COMPLAINT

not paid "by end of business today im filing a major lawsuit with all 22 compliant letters," and telling counsel "You are now part of this too. You can thank your clients for that. Im not playing games," and that what counsel was "doing is criminal." That loan is one of the five Current Customers identified above. One minute later, at 3:35 p.m. on August 4, 2026, Defendant began sending text messages to NEXA's counsel's personal mobile telephone from a telephone number. In those messages Defendant demanded payment "before 5 pm today"; wrote "You think im bluffing ignore this message predator"; asserted that because of the documents counsel had sent, "your liable too my attorneys say"; stated that his son's tuition would go unpaid "due to your negligence"; and wrote: "Give me fuel ⛽ to execute this." On August 5, 2026 at 4:18 p.m.—the day before this action was filed—Defendant sent a further electronic mail message that read, in its entirety: "Where's my money you crooks?" He addressed it to NEXA's Ledger Team and copied NEXA's Director of Growth and Retention, other NEXA personnel, and NEXA's Chief Executive Officer at his personal electronic mail address. Absent an injunction, Defendant's conduct will continue.

43.    Each such publication and communication was an "action to divert such loans to a competitor or away from Company" within the meaning of Section XIV.D of the Agreement, and interference with the business of NEXA within the meaning of Section XIV.E, because each was directed at NEXA's Current Customers, leads, loans in process, referral sources, or personnel and was calculated to drive them away from NEXA.

44.    As a direct and proximate result of Defendant's conduct, NEXA has suffered and continues to suffer damages, including lost and threatened business, injury to its reputation and goodwill, and the loss and jeopardy of its confidential information and trade secrets, and NEXA has no adequate remedy at law to prevent Defendant's ongoing and threatened misconduct.

13

VERIFIED COMPLAINT

**COUNT I**
**(Breach of Contract)**

45.    NEXA repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

46.    The Agreement is a valid and enforceable contract between NEXA and Defendant, and NEXA performed its obligations under the Agreement.

47.    Defendant breached the Agreement, including Sections XIV.A, XIV.B, XIV.D, and XIV.E, by, among other things, failing and refusing to return NEXA's documents, files, leads, and loans in process; failing to provide the written account of open leads, business prospects, and loans in process required by Section XIV.D; retaining and using NEXA's confidential information; and soliciting and attempting to divert NEXA's customers and clients. Defendant further breached NEXA's Strict Email Use Policy, executed as part of the same agreement package, by forwarding and disseminating NEXA communications and customer communications to external and personal e-mail accounts and to third parties without authorization.

48.    The restrictive covenants in Section XIV are reasonable, are no broader than necessary to protect NEXA's legitimate business interests, and are enforceable under Arizona law.

49.    By reason of the foregoing, Defendant is liable to NEXA for damages in an amount to be determined at trial, including the liquidated damages provided by Section XIV.E of the Agreement, together with NEXA's attorneys' fees and expenses under Section XIV.H of the Agreement and A.R.S. § 12-341.01, plus interest and costs.

50.    NEXA's investigation is continuing. NEXA reserves the right to amend to assert a claim under Section XIV.F of the Agreement should discovery establish that Defendant solicited any person in an employment or independent contractor relationship with NEXA.

14

## COUNT II
### (Misappropriation of Trade Secrets—
### Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.)

51.    NEXA repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

52.    NEXA owns trade secrets within the meaning of 18 U.S.C. § 1839(3), including its loan files, leads, customer lists and information, pricing information, referral sources, and investor lists. This information derives independent economic value from not being generally known or readily ascertainable by others, and NEXA has taken reasonable measures to keep it secret, including through the confidentiality and property covenants in the Agreement and restrictions on access to its systems.

53.    NEXA's trade secrets are related to products and services used in, and intended for use in, interstate commerce, including the origination of residential and commercial mortgage loans across multiple states and through out-of-state lenders and investors.

54.    Defendant misappropriated NEXA's trade secrets within the meaning of 18 U.S.C. § 1839(5) by acquiring, retaining, disclosing, and using them without NEXA's consent, when he knew or had reason to know that the information was acquired under circumstances giving rise to a duty to maintain its secrecy and to limit its use.

55.    As a direct and proximate result of Defendant's misappropriation, NEXA has suffered and will suffer damages, including actual loss and Defendant's unjust enrichment, and faces continued and threatened misappropriation for which it has no adequate remedy at law.

56.    NEXA is entitled to injunctive relief and to damages for its actual loss and Defendant's unjust enrichment, or a reasonable royalty, under 18 U.S.C. § 1836(b)(3), in an amount to be determined at trial.

## COUNT III
### (Misappropriation of Trade Secrets—
### Arizona Uniform Trade Secrets Act, A.R.S. § 44-401 et seq.)

57.     NEXA repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

58.     NEXA's loan files, leads, customer lists and information, pricing information, referral sources, and investor lists are trade secrets within the meaning of A.R.S. § 44-401, in that they derive independent economic value from not being generally known or readily ascertainable and are the subject of reasonable efforts to maintain their secrecy.

59.     Defendant misappropriated NEXA's trade secrets within the meaning of A.R.S. § 44-401 by acquiring, retaining, disclosing, and using them without consent, knowing or having reason to know that they were acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

60.     NEXA is entitled to injunctive relief under A.R.S. § 44-402, to damages for its actual loss and Defendant's unjust enrichment (or a reasonable royalty) under A.R.S. § 44-403, and, because Defendant's misappropriation was willful and malicious, to exemplary damages under A.R.S. § 44-403 and reasonable attorneys' fees under A.R.S. § 44-404.

## COUNT IV
### (Defamation and Defamation Per Se)

61.     NEXA repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

62.     Each publication alleged in this Count was also an action that violates Sections XIV.D and XIV.E of the Agreement, as alleged above—an action to divert NEXA's leads and loans in process away from NEXA and to interfere with NEXA's business—and this Count accordingly seeks relief arising from actions that violate Section XIV within the meaning of Section XVI of the Agreement.

16

63. Defendant published to third parties false statements of and concerning NEXA that bring NEXA into disrepute, contempt, or ridicule and impeach NEXA's honesty, integrity, and reputation, including the statements that NEXA prices loans thousands of dollars higher "to steal from consumer and orgination"; that NEXA "keeps lion shares of your revenue and calls it a ledger and keeps the money by parting ways when their investors drop ball"; that NEXA and its personnel are "Predators"; and that NEXA's Director of Growth and Retention "is a predator lies upon recruiting and belonging in prison."

64. The statements are false. Defendant published them with knowledge of their falsity or with reckless disregard for their truth or falsity, and at a minimum negligently.

65. Because the statements tend to injure NEXA in its business, trade, and profession, they are defamatory per se, and NEXA's pecuniary damages are presumed.

66. As a direct and proximate result, NEXA has suffered damages, including injury to its business reputation and goodwill, in an amount to be determined at trial, and is entitled to presumed and punitive damages.

## COUNT V
### (Injurious Falsehood / Commercial Disparagement)

67. NEXA repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

68. Each publication alleged in this Count was also an action that violates Sections XIV.D and XIV.E of the Agreement, as alleged above, and this Count accordingly seeks relief arising from actions that violate Section XIV within the meaning of Section XVI of the Agreement.

69. Defendant published false statements derogatory to NEXA's business and to the quality of NEXA's services, of a kind calculated to prevent others from dealing with NEXA and to interfere with NEXA's business relations to its disadvantage.

17

VERIFIED COMPLAINT

70.     Defendant published the statements knowing they were false or with reckless disregard for their truth, and intending to cause, or recognizing that they would likely cause, pecuniary harm to NEXA.

71.     As a direct and proximate result, NEXA has suffered special damages and pecuniary loss, including lost business and lost customer and referral relationships, in an amount to be determined at trial.

## COUNT VI
### (Tortious Interference with Contract and Business Expectancy)

72.     NEXA repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

73.     Defendant's interference consisted of, and was accomplished by, the same actions that violate Sections XIV.D and XIV.E of the Agreement—his solicitation and diversion of NEXA's Current Customers, leads, and loans in process, and his interference with NEXA's business—and this Count accordingly seeks relief arising from actions that violate Section XIV within the meaning of Section XVI of the Agreement.

74.     NEXA has valid contractual relationships and business expectancies with its customers, clients, loan applicants, and referral sources, which constitute specific and identifiable relationships and are more than a mere hope.

75.     Defendant, who had knowledge of those relationships and expectancies, intentionally and improperly interfered with them—through improper means and with an improper motive to injure NEXA—by publishing false and defamatory statements about NEXA, by urging customers not to do business with NEXA, and by soliciting and attempting to divert NEXA's customers and applicants.

76.     As a direct and proximate result of Defendant's interference, NEXA has suffered damages, including lost business and lost customer and referral relationships, in an amount to be determined at trial.

18

## COUNT VII
### (Breach of Contract—Specific Performance of Sections XIV.B and XIV.D)

77.    NEXA repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

78.    NEXA owns its loan files and business records, which the Agreement expressly designates as the sole and exclusive property of NEXA and which Defendant agreed to return immediately upon termination.

79.    In violation of Section XIV.B of the Agreement, Defendant has retained, and has failed and refused to return upon termination and after demand, NEXA's documents, files, electronic records and data, and other property, and in violation of Section XIV.D has failed to provide the required written account of open leads, business prospects, and loans in process. NEXA's loan files and business records are unique and irreplaceable, and NEXA has no adequate remedy at law for their recovery. NEXA is entitled to an order of specific performance requiring the immediate return of all such property and the delivery of the written account required by Section XIV.D.

80.    As a direct and proximate result, NEXA has been damaged in an amount to be determined at trial, including the costs of recovering its property and records.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff NEXA Mortgage, LLC respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

A.    Preliminarily and permanently enjoining Defendant, and those acting in concert with him, from using, disclosing, or retaining NEXA's confidential information and trade secrets; from soliciting or diverting NEXA's customers, clients, loan applicants, employees, and contractors in violation of the Agreement, and requiring Defendant to return all of NEXA's property, files, and records;

19

B.     Awarding NEXA compensatory damages in an amount to be determined at trial, together with the liquidated damages provided by Section XIV.E of the Agreement;

C.     Awarding NEXA damages for its actual loss and Defendant's unjust enrichment, or a reasonable royalty, under the Defend Trade Secrets Act and the Arizona Uniform Trade Secrets Act;

D.     Awarding NEXA exemplary and punitive damages as permitted by law, including under A.R.S. § 44-403;

E.     Awarding NEXA its reasonable attorneys' fees and costs, including under Section XIV.H of the Agreement, A.R.S. § 12-341.01, and A.R.S. § 44-404;

F.     Awarding NEXA pre- and post-judgment interest as permitted by law; and

G.     Granting NEXA such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff NEXA Mortgage, LLC demands a trial by jury on all issues so triable.

VERIFIED COMPLAINT

**VERIFICATION**

I, Rana Mortensen, am the Chief Administrative Officer of Plaintiff NEXA Mortgage, LLC, and I am authorized to make this verification on its behalf. I have read the foregoing Verified Complaint and know its contents. The facts alleged therein are true of my own knowledge, except as to those matters alleged on information and belief—including matters based on NEXA's business records maintained in the ordinary course of business, which I am authorized to review, and on information and documents provided or reported to me by NEXA's personnel and by NEXA's counsel—and as to those matters I believe them to be true. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 6, 2026, at _Chandler_ [city], _Arizona_ [state],

Rana Mortensen, Chief Administrative Officer, NEXA Mortgage, LLC

21

Dated: August 7, 2026

**BRODY | GAPP LLP**

*/s/ Nathan J. Kunz*
Nathan J. Kunz

*Attorneys for Plaintiff NEXA Mortgage, LLC*

22