Nathan J. Kunz (024819)
nkunz@brodygapp.com
BRODY | GAPP LLP
2102 Business Center Drive, Suite 2047
Irvine, CA  92612
Telephone: (602) 962-1976

*Attorneys for Plaintiff NEXA Mortgage, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| NEXA Mortgage, LLC, an Arizona limited liability company,<br><br>         Plaintiff,<br>v.<br><br>Austin Dell'Abate, a resident of Texas,<br><br>         Defendant. | Case No.:<br><br>**PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER WITH NOTICE AND PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

Plaintiff NEXA Mortgage, LLC ("NEXA" or the "Company"), by and through its attorneys, respectfully moves this Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a temporary restraining order and a preliminary injunction restraining Defendant Austin Dell'Abate from using or disclosing NEXA's confidential information and trade secrets, requiring the return of NEXA's property, and enjoining Defendant from soliciting or diverting NEXA's customers, clients, loan applicants, employees, and contractors in violation of his contractual obligations. This Motion is supported by the following Memorandum of Points and Authorities, the accompanying Declaration of Rana Mortensen and the exhibits thereto, the Verified Complaint, and the entire record herein.

**Notice.** NEXA seeks a temporary restraining order **on notice** to Defendant. Concurrently with the filing of this Motion, NEXA is serving this Motion, the Verified Complaint, the supporting Declaration and exhibits, and the proposed order on Defendant

1

by personal service at his residence in Lakeway, Texas, and by electronic mail to ATX.ATX@yahoo.com and austinmortgagefinance@gmail.com, and will promptly file proof of service. Defendant's residential address and both of his electronic mail addresses are known to NEXA and are identified in the accompanying Declaration, and Defendant was in direct communication with NEXA's counsel as recently as August 4, 2026. Because NEXA proceeds on notice, the requirements of Fed. R. Civ. P. 65(b)(1) that govern only a temporary restraining order issued without notice—including the specific-facts showing under Rule 65(b)(1)(A) and the attorney certification of efforts to give notice under Rule 65(b)(1)(B)—do not apply. NEXA's request is instead governed by the notice provisions of Rule 65(a) and the general standard for injunctive relief.

## PRELIMINARY STATEMENT

NEXA is an Arizona mortgage broker that originates residential and commercial mortgage loans through licensed loan originators using the Company's lender relationships, compliance infrastructure, and loan origination systems. Defendant is a former independent-contractor loan originator whose relationship with NEXA was terminated on July 22, 2026 after a documented pattern of abusive conduct that had generated complaints from two independent loan-processing companies, a federal agency, NEXA's wholesale lender, a borrower, and NEXA's own personnel. Since his termination, Defendant has refused to return NEXA's loan files, leads, and customer information; has publicly claimed that NEXA's clients and files belong to him; and has solicited and attempted to divert NEXA's customers and referral sources—all in direct violation of the confidentiality, property, and non-solicitation covenants in his written Independent Contractor Agreement and of federal and Arizona trade-secret law.

NEXA does not seek to restrain Defendant's speech. It seeks only to stop his ongoing and threatened misappropriation of NEXA's trade secrets and confidential information, to compel the return of NEXA's property, and to enforce the non-solicitation covenants to which Defendant agreed. Because NEXA is likely to succeed on the merits,

2

faces irreparable harm to its trade secrets, goodwill, and customer relationships that money damages cannot repair, and because the balance of equities and the public interest favor relief, NEXA respectfully requests that the Court grant a temporary restraining order and preliminary injunction.

## I.    BACKGROUND

The NEXA Mortgage, LLC Independent Contractor Agreement (the "Agreement") is dated and was entered into as of May 8, 2026, and was executed by Defendant on May 15, 2026. Under Section XIV, Defendant agreed that NEXA's confidential information—including its business methods, leads, loan programs, referral sources, marketing strategies, software, and investor lists—would be used solely for NEXA's benefit and not disclosed (§ XIV.A); that all documents, files, and records pertaining to NEXA's business are the "sole and exclusive property of Company" and would be returned immediately upon termination (§ XIV.B); that "all leads provided to or worked on by Contractor and loans in process are Company's property," that he would provide upon termination a written account of all open leads and loans in process, and that he would "not . . . take any action to divert such loans to a competitor or away from Company" (§ XIV.D); and that for twelve months following termination he would not interfere with NEXA's business or solicit the transfer of any current customer, subject to $7,500 in liquidated damages per solicited current customer (§ XIV.E), or solicit NEXA's personnel (§ XIV.F). Section XIV.E provides that "Current customers include any loan applications taken in the name of Company but not yet funded," and that "[a] Current Customer may be released to a Contractor only by the express written consent of the Chief Executive Officer of the Company." The Agreement is governed by Arizona law and permits NEXA to seek relief in a federal court in Arizona for any violation of Section XIV (§ XVI).

NEXA terminated the relationship on July 22, 2026. On the morning of that day, NEXA's wholesale lender transmitted a report of Defendant's live pipeline identifying five loans in process and unfunded, and asked that NEXA ensure "the borrowers are taken

care of and reassigned." Each of those borrowers is a Current Customer within the meaning of Section XIV.E. Since the termination, as set forth in the accompanying Declaration, Defendant has refused to return NEXA's loan files, leads, and customer information; has never provided the written account required by Section XIV.D; has asserted publicly that NEXA's clients, files, and "pipeline" belong to him; has urged NEXA's customers not to do business with the Company; and has solicited and attempted to divert NEXA's customers and loan applicants, including by instructing a NEXA-era contact to disregard NEXA's communications and to "just communicate with me directly" at Defendant's personal e-mail address.

On July 28, 2026, NEXA's counsel sent Defendant a cease-and-desist and demand letter by certified mail and electronic mail, demanding the immediate return of NEXA's property and the written account required by Section XIV.D within three business days. Defendant did not comply. Instead, between July 29 and August 4, 2026 he sent NEXA's counsel at least twelve e-mails demanding an immediate wire transfer of more than $50,000, warning that "this is going to escalate quickly no if ands or buts," stating that it is his "duty to make public knowledge how predatory nexa practices on a daily basis," and stating that "the sheriff's office is requesting" the home addresses of NEXA's Chief Executive Officer and of Mr. Brown. When NEXA's counsel asked him in writing on July 30 to stop communicating directly and to identify the counsel he claimed to have retained, Defendant identified no counsel and e-mailed counsel again the next morning. He did not stop there. On August 4, 2026—five days after being told to stop—Defendant e-mailed counsel again demanding payment by "end of business today," and one minute later began texting counsel's personal mobile telephone from a telephone number, demanding payment "before 5 pm today," telling counsel "You are now part of this too," that "your liable too," and that what counsel was doing "is criminal," and writing "Give me fuel ⛽ to execute this." He still did not stop. On August 5, 2026 at 4:18 p.m.—the day before this Motion was filed—Defendant e-mailed NEXA's Ledger Team, copying NEXA's Director

of Growth and Retention, other NEXA personnel, and NEXA's Chief Executive Officer at his personal address: "Where's my money you crooks?" The conduct is ongoing and escalating; the most recent message was sent the day before this Motion was filed.

## II.    ARGUMENT

### A.    NEXA Satisfies the Standard for a Temporary Restraining Order and Preliminary Injunction.

A party seeking a temporary restraining order or preliminary injunction must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm absent relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is "an extraordinary remedy never awarded as of right," and requires a clear showing on each factor. *Id.* at 22, 24. The same standard governs a temporary restraining order. In the Ninth Circuit, an injunction may also issue where the movant raises "serious questions going to the merits" and the balance of hardships "tips sharply" in its favor, provided the movant also shows a likelihood of irreparable harm and that an injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011). Rule 65 of the Federal Rules of Civil Procedure governs the procedure for such relief.

### B.  NEXA Is Likely To Succeed On The Merits.

#### 1.    Trade-secret misappropriation.

NEXA's loan files, leads, customer information, pricing, referral sources, and investor lists are trade secrets: they derive independent economic value from not being generally known and are the subject of reasonable secrecy efforts, including the confidentiality and property covenants in the Agreement and restrictions on access to NEXA's systems. Under both the federal Defend Trade Secrets Act and the Arizona Uniform Trade Secrets Act, misappropriation includes acquiring, disclosing, or using a trade secret that the actor knew or had reason to know was acquired under a duty to

maintain its secrecy. 18 U.S.C. §§ 1836, 1839; A.R.S. § 44-401. The DTSA's interstate-commerce element is satisfied where the trade secrets relate to services provided to out-of-state customers or paid for through interstate channels. NEXA's multistate mortgage lending, its out-of-state wholesale lenders and investors, and its origination of loans secured by property in multiple States readily satisfy that nexus. *Gordon Grado M.D., Inc. v. Phoenix Cancer & Blood Disorder Treatment Inst. PLLC*, 603 F. Supp. 3d 799, 808-11 (D. Ariz. 2022). Defendant's retention and use of NEXA's files, leads, and customer information after termination, in breach of his express duty to return and not use them, constitutes misappropriation under both statutes.

NEXA's lead and customer compilations are protectable because NEXA "expend[ed] a great deal of time, effort, and expense in developing" them and treats them as confidential, and a third party "wishing to duplicate the information could not do so without investing a significant amount of time, effort, and expense." *Fire Sec. Elecs. & Commc'ns Inc. v. Nye*, No. CV-23-02730-PHX-DLR, 2024 WL 620813, at *3 (D. Ariz. Feb. 14, 2024) (*quoting Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1089-90 (E.D. Cal. 2012)); *see Calisi v. Unified Fin. Servs., LLC*, 232 Ariz. 103, 106-08, 302 P.3d 628, 631-33 (Ct. App. 2013). And because the Agreement obligated Defendant to return all such materials immediately upon termination, his continued retention of them—coupled with his public claims that they belong to him—is itself "actual or threatened misappropriation" warranting an injunction. *ReBath LLC v. Foothills Serv. Sols. Co.*, No. CV-21-00870-PHX-DWL, 2021 WL 2352426, at *10-*11 (D. Ariz. June 9, 2021) (retention in breach of a contractual return obligation, where defendant "still considers itself entitled to these materials," established threatened misappropriation and irreparable harm). Nor is this a case about "a few, discrete" customer files, *cf. Goldwater Bank NA v. Caliber Home Loans Inc.*, No. CV-21-01190-PHX-MTM, 2021 WL 4593075, at *5 (D. Ariz. Oct. 6, 2021): Defendant has retained, and publicly claims ownership of, NEXA's

MOTION FOR TEMP. RESTRAINING ORDER AND PRELIM. INJ.
MEMORANDUM OF POINTS AND AUTHORITIES

entire pipeline of leads and loans in process, compiled and maintained at NEXA's expense in NEXA's loan origination systems.

### 2.      Breach of the restrictive covenants.

A breach-of-contract claim under Arizona law requires a contract, its breach, and resulting damages. *Steinberger v. McVey*, 234 Ariz. 125, 318 P.3d 419 (Ct. App. 2014). The Agreement is a valid contract; NEXA performed; and Defendant breached Sections XIV.A, XIV.B, XIV.D, and XIV.E by retaining and using NEXA's confidential information and property and by soliciting and attempting to divert NEXA's customers. Arizona enforces non-solicitation ("anti-piracy") covenants that are no broader than necessary to protect the employer's legitimate business interests, and such covenants— which restrict solicitation of customers and use of confidential information rather than barring competition outright—"ordinarily [are] not deemed unreasonable or oppressive." *Hilb, Rogal & Hamilton Co. of Ariz. v. McKinney*, 190 Ariz. 213, 216, 946 P.2d 464, 467 (Ct. App. 1997). NEXA's twelve-month customer non-solicitation covenant is reasonable and enforceable, and NEXA is likely to prevail on its breach claim.

Courts in this District routinely enforce customer non-solicitation covenants of this duration by preliminary injunction. *E.g., JPMorgan Sec. LLC v. Vallery*, No. CV-23-00651-PHX-JAT, 2023 WL 3160988, at *3-*4, *9 (D. Ariz. Apr. 28, 2023) (enjoining solicitation under one-year covenant); *Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 979-80 (D. Ariz. 2006) (one year reasonable in the financial-services industry). Should the Court conclude that any grammatically severable term of Section XIV sweeps too broadly, NEXA requests that the Court apply Arizona's blue-pencil rule and enforce the remainder. *Compass Bank*, 430 F. Supp. 2d at 980-81; *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 372, 982 P.2d 1277, 1286 (1999).

### C.      NEXA Will Suffer Irreparable Harm Absent Relief.

Irreparable harm is harm for which there is no adequate remedy at law such as money damages. Courts in this District have repeatedly held that the loss of customer

goodwill and follow-on business flowing from the breach of a non-solicitation covenant, and the disclosure of confidential information and trade secrets, are precisely the kinds of harm that cannot be compensated by money damages and warrant injunctive relief. *ETrade Fin. Corp. v. Eaton*, 305 F. Supp. 3d 1029, 1036 (D. Ariz. 2018); *Fire Sec.*, 2024 WL 620813, at *6-*7; *see also SinglePoint Direct Solar LLC v. Curiel*, No. CV-21-01076-PHX-JAT, 2021 WL 3472744 (D. Ariz. Aug. 6, 2021) (dissemination of confidential business information "poses a significant risk that Plaintiffs would lose customer relationships, revenue, and goodwill," establishing likely irreparable harm); *Tribal Behav. Health LLC v. Reeves*, No. CV-22-00926-PHX-SPL, 2022 WL 2290563, at *11-*12 (D. Ariz. June 24, 2022) (loss of customers, business reputation, and goodwill can constitute irreparable harm, and the improper use or public disclosure of a trade secret is a harm not readily addressed through an award of money damages). Defendant's continued possession and threatened use and disclosure of NEXA's loan files, leads, and customer information—and his ongoing solicitation of NEXA's customers—threaten NEXA with the irretrievable loss of its trade secrets, customer relationships, and goodwill. That harm is imminent and non-speculative, and it will continue absent an injunction.

Moreover, "[u]nder Arizona law, once a protectable interest is established, irreparable injury is presumed to follow if the interest is not protected," and "injunctive relief is the only means of effective enforcement" of a covenant of limited duration. Compass Bank, 430 F. Supp. 2d at 983 (quotation omitted). Section XIV.E tolls that duration: the twelve-month period is defined as "such period not to include any period(s) of violation or period(s) of time required for litigation to enforce the covenants herein." The covenant therefore remains enforceable through judgment, and Defendant's continuing violations extend his own obligation. But tolling preserves only the period of the covenant; it does not restore the customers, the pending applications, or the goodwill lost while the breach continues. The harm here is ongoing and imminent, not retrospective: Defendant retains NEXA's files and leads today, publicly asserts that they belong to him,

and continues to solicit the applicants and customers they identify. That combination—retention in breach of a return obligation plus a claimed entitlement to the materials—is precisely what this District has held sufficient. ReBath, 2021 WL 2352426, at *11.

Nor does Section XIV.E's liquidated-damages provision supply an adequate remedy at law. That clause fixes a sum—$7,500—for a single, defined breach: soliciting the transfer of a Current Customer. It does not measure, and by its terms does not reach, Defendant's retention and threatened disclosure of NEXA's confidential information and trade secrets under Sections XIV.A and XIV.B, his refusal to provide the accounting required by Section XIV.D, or NEXA's claims under the Defend Trade Secrets Act and the Arizona Uniform Trade Secrets Act, which arise independent of the Agreement. Nothing in the Agreement makes liquidated damages an exclusive remedy, and two provisions confirm the parties intended otherwise: Section XIV.H entitles NEXA to "the cost of all legal fees and expenses incurred in investigating and enforcing the covenants contained herein," and Section XVI expressly preserves each party's right to "seek[] relief in a state or federal court located in Arizona, arising from any action that violates section XIV of this Agreement." Parties who intended a fixed per-customer payment to be the whole of NEXA's remedy would not have preserved NEXA's right to come to this Court. And no per-customer figure can compensate the loss of goodwill or reach the loan applicants who abandon a pending file and are never identified: NEXA cannot count what it cannot find.

### D. The Balance Of Equities And The Public Interest Favor An Injunction, And The Requested Relief Is Limited To Conduct.

The balance of equities favors NEXA. The requested relief asks only that Defendant honor obligations to which he already agreed—to return NEXA's property, to refrain from using NEXA's confidential information, and to refrain from soliciting NEXA's customers for twelve months. An injunction imposes no cognizable hardship on Defendant, who has no legitimate right to NEXA's property or to solicit NEXA's

customers in breach of his covenants; consistent with the Defend Trade Secrets Act, the requested order does not prevent Defendant from earning a living or entering any employment relationship, but only from misappropriating trade secrets and violating his covenants. 18 U.S.C. § 1836(b)(3)(A). Defendant has already conceded as much. In Section XIV.H he agreed that "the restrictions herein will not interfere with or unduly limit his/her ability to obtain suitable alternative gainful employment or income following termination of relationship with Company," and acknowledged that "the protections afforded to Company herein, are reasonable and necessary." The public interest favors the enforcement of valid contracts and the protection of trade secrets and confidential information.

The requested order is also drawn to avoid collateral consequences for borrowers and regulators: it does not affect any closed loan, and it excepts records that Defendant is required by applicable law to retain. *Cf. Goldwater Bank*, 2021 WL 4593075, at *5-*6 (declining an injunction that could have displaced borrowers and conflicted with the record-retention requirements of 12 C.F.R. § 1026.25). The public interest is served twice over here, because the loan files at issue contain borrowers' most sensitive financial information—income, tax, and account records supplied to NEXA in confidence. *See ETrade*, 305 F. Supp. 3d at 1036 (client information "is confidential, precisely because of their status as a client and their desire to keep private matters private").

The requested relief is deliberately limited to conduct, not speech. NEXA does not ask the Court to enjoin Defendant's statements. An injunction restraining allegedly defamatory or disparaging speech before a final adjudication of falsity is a presumptively unconstitutional prior restraint; NEXA's remedy for Defendant's false statements lies in damages, not in restraining publication. *Near v. Minnesota*, 283 U.S. 697, 713-20 (1931); *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419-20 (1971); *Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1089-90 (C.D. Cal. 2012). The requested order is

MOTION FOR TEMP. RESTRAINING ORDER AND PRELIM. INJ.
MEMORANDUM OF POINTS AND AUTHORITIES

therefore confined to the misappropriation of trade secrets and the solicitation and diversion of NEXA's customers and personnel.

Finally, NEXA respectfully requests that the Court set security in the amount of $5,000 under Rule 65(c) of the Federal Rules of Civil Procedure, the amount reflected in the accompanying proposed order, because Defendant will suffer little or no cognizable harm from being required to comply with his existing legal obligations. *See Fire Sec.*, 2024 WL 620813, at \*8 (requiring no security where the injunction "only prohibits [defendants] from engaging in conduct they otherwise were prohibited from doing under the law").

### E.    The Agreement's Arbitration Provision Poses No Obstacle To The Requested Relief.

NEXA's claims are properly before this Court rather than in arbitration. The Agreement commits to arbitration only a "Covered Dispute," a defined term that expressly excludes "a claim enforcing or challenging this Agreement," and Section XVI of the Agreement expressly provides that it "does not prevent any party from seeking relief in a state or federal court located in Arizona, arising from any action that violates section XIV of this Agreement." Every claim on which this Motion rests enforces the Agreement and arises from Defendant's violations of Section XIV—his retention of NEXA's files and records (Section XIV.B), his failure to account for, and his diversion of, leads and loans in process (Section XIV.D), and his solicitation of NEXA's customers and interference with its business (Section XIV.E).

Because the Agreement by its terms excludes these claims from the definition of a Covered Dispute and affirmatively authorizes suit in this Court, NEXA does not merely dispute the scope of an arbitration clause—it disputes the existence of any agreement to arbitrate these claims at all, and in that posture "the presumption in favor of arbitrability does not apply." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014). Courts in this District give effect to such contractual carve-outs as written. *ReBath*, 2021

11

WL 2352426, at *6-*7 (adjudicating an application for emergency injunctive relief notwithstanding the parties' dispute-resolution clauses, where the contract preserved the right to seek injunctive relief in court).

In any event, even as to any claim arguably subject to arbitration, this Court may grant interim injunctive relief to preserve the status quo and the meaningfulness of any arbitration that may follow. *Toyo Tire Holdings of Americas Inc. v. Continental Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010); *PMS Distrib. Co. v. Huber & Suhner, A.G.*, 863 F.2d 639, 641-42 (9th Cir. 1988); *see Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 867-68 (9th Cir. 2021) (describing *Toyo Tire*, and explaining that interim relief is warranted where a party could "los[e] its customers before interim relief [from the arbitral panel was] possible," a result that would "defeat any ultimate award" (*quoting Toyo Tire*, 609 F.3d at 981); finding that standard unmet on the facts there). Each element of the relief NEXA seeks preserves the status quo that existed before Defendant's breaches—NEXA's exclusive possession of its files, leads, and loans in process, and its undisturbed customer relationships—pending adjudication in any forum. Defendant's continued retention, and threatened use and disclosure, of NEXA's trade secrets, loan files, and customer information would render any later award ineffectual. Interim relief is therefore necessary to preserve a meaningful remedy in any forum, and no emergency procedure available in arbitration can supply the ex parte relief, binding effect on third parties acting in concert, or contempt authority that Rule 65 provides.

## III.    CONCLUSION

For the foregoing reasons, NEXA respectfully requests that the Court enter a temporary restraining order and preliminary injunction (i) enjoining Defendant from using, disclosing, or retaining NEXA's confidential information and trade secrets; (ii) requiring Defendant to return all of NEXA's property, files, leads, and records and to provide the written account of open leads and loans in process required by the Agreement; and (iii) enjoining Defendant from soliciting or diverting NEXA's customers, clients, loan

applicants, employees, and contractors in violation of the Agreement, together with such other and further relief as the Court deems just and proper.

Dated: August 7, 2026            **BRODY | GAPP LLP**

                                 */s/ Nathan J. Kunz*
                                 Nathan J. Kunz


                                 *Attorneys for Plaintiff NEXA Mortgage, LLC*

MOTION FOR TEMP. RESTRAINING ORDER AND PRELIM. INJ.
MEMORANDUM OF POINTS AND AUTHORITIES